IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 23, 2020

**STATE OF TENNESSEE v. KIMBERLY REED**

**Appeal from the Criminal Court for Sullivan County**
**Nos. S68,778-81; S69-185    James F. Goodwin, Jr., Judge**

_____

**No. E2019-01483-CCA-R3-CD**

_____

The Defendant, Kimberly Reed, pled guilty to forgery, a Class E felony; identity theft, a Class D felony; theft of property valued at $2,500 or more but less than $10,000, a Class D felony; theft of property valued at $1,000 or more but less than $2,500, a Class E felony; theft of property valued at less than $1,000, a Class A misdemeanor; attempted misdemeanor theft, a Class B misdemeanor; fraudulent use of a credit card, a Class A misdemeanor; criminal impersonation, a Class B misdemeanor; and criminal trespass, a Class C misdemeanor.  See Tenn. Code Ann. §§ 39-12-101, -14-103, -14-114, -14-118, -14-150, -14-405, -16-301.  The trial court imposed a total effective sentence of ten years in confinement.  On appeal, the Defendant contends that the trial court abused its discretion by denying alternative sentencing.  Following our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR.,  JJ., joined.

Andrew J. Gibbons, District Public Defender; and Ashley D. Boyer, Assistant Public Defender, for the Appellant, Kimberly Reed.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Barry P. Staubus, District Attorney General; and Emily Smith (at furlough hearing) and Michael Filetti (at sentencing hearing), Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

The Defendant was charged in multiple cases of identity theft related to her use of three victims' credit cards, debit cards, identification cards, and checks.  The record reflects

that the Defendant stole each of the victims' unattended wallets or purses at Holston Valley Medical Center in Kingsport, Tennessee. The Defendant was also charged in connection with a shoplifting incident at a Kingsport Walmart, during which the Defendant claimed to be one of her identity theft victims. During a period of months, the Defendant was indicted and charged by presentment as follows:

| Case Number | Count(s) | Offense | Victim |
|---|---|---|---|
| **S68,778** Grand Jury Presentment 01/10/2017 | 1, 2 | Theft under $1,000 | Carla Goff |
| | 3, 12, 13, 14 | Identity theft | |
| | 4, 6, 8, 10 | Attempted theft under $1,000 | |
| | 5, 7, 9, 11 | Fraudulent use of a credit card | |
| **S68,779** Grand Jury Indictment 12/12/2017 | 1, 2, 3, 4, 5 | Forgery | Shirley Brooks[1] |
| | 6, 7, 8, 9, 10 | Identity theft | |
| | 11 | Theft of $1,000 or more but less than $2,500 | |
| **S68,780** Grand Jury Indictment 12/12/2017 | 1, 2, 3, 4, 5 | Forgery | Shirley Brooks |
| | 6, 7, 8, 9, 10 | Identity theft | |
| | 11 | Theft of $2,500 or more but less than $10,000 | |
| **S68,781** Grand Jury Presentment 01/24/2018 | 1 | Identity theft | Carla Goff |
| | 2 | Theft of less than $1,000 | Walmart |
| | 3 | Criminal Impersonation | n/a |
| | 4 | Criminal trespass | Walmart |
| **S69,185** Grand Jury Presentment 01/10/2018 | 1 | Theft of $2,500 or more but less than $10,000 | Kathy Cardic |
| | 2-4 | Identity theft | |

On June 8, 2018, the Defendant pled guilty as charged in all five cases and received an agreed-upon effective sentence of ten years, with the manner of service to be determined by the trial court. Specifically, the Defendant requested that she be admitted to the "drug court" program, formally titled the Tennessee Recovery Oriented Compliance Strategy (TN-ROCS). Before the sentencing hearing, the Defendant was furloughed to the Magnolia Ridge thirty-day drug treatment program in Johnson City, Tennessee, on July 20, 2018; the trial court noted that the Defendant had been "conditionally accepted" to TN-ROCS pending her successful completion of the Magnolia Ridge program. The court

---

[1] The record reflects that the Defendant's boyfriend, who participated in some of the offenses, was Ms. Brooks's nephew.

declined to impose the Defendant's sentence at that time, and a status hearing was set for August 30, 2018.

Thereafter, on September 5, 2018, the Defendant was charged by presentment in case number S70,228 for failure to appear at the August 30 status hearing. The Defendant pled guilty in that case on May 2, 2019.

The sentencing hearing on all six cases occurred on June 26, 2019. The Defendant testified that she had served seven and one-half months in jail for the violation of a previous probationary sentence due to the charges in the five cases preceding her failure to appear. She stated that eight days before she would have successfully completed the Magnolia Ridge program, she had a seizure and was taken to a hospital. The Defendant noted that she refused pain medication at the hospital because she would not have been allowed to return to Magnolia Ridge. The Defendant said that she was given a new medication that made her drowsy and that two days after returning to Magnolia Ridge, she fell asleep during a group session, which she characterized as "the worst disrespect" possible to the group members. As a result, the Defendant was asked to leave. The Defendant stated that she and her mother unsuccessfully pleaded with Magnolia Ridge to allow her to stay; after her expulsion from the program, the Defendant felt "like a failure" and relapsed.

The Defendant testified that as a result of her drug and alcohol use, she did not want to attend her next court date. The Defendant noted that because she was using drugs, she was not "coherent." She stated that she was arrested in February 2019 for public intoxication and criminal impersonation. The Defendant noted that she had reapplied to TN-ROCS, and she requested to attend a lengthier residential treatment program that would remove her from her home. The Defendant stated that she had secured a place to stay in the community that was free of drugs and alcohol, but she added that she preferred residential treatment. She requested to be sent to the "Mending Hearts" program in order to learn coping strategies for her addiction, have a "better support group," and attend alcohol and drug classes to teach her the tools she needed to "make it out there[.]" The Defendant stated that she began using marijuana at age twelve and that at age fifteen, she began using alcohol, cocaine, and "everything."

On cross-examination, the Defendant acknowledged that after her relapse, she did not come back to court until she was arrested in February 2019. She stated that at the time of her arrest, she was intoxicated on alcohol and "crystal meth." She averred that this was the first time she had "done that" since her discharge from the drug treatment program and that she did not know from whom she obtained the methamphetamine. She stated that after she left drug treatment, she drank a "fifth" of alcohol daily and occasionally smoked marijuana at a friend's house where she sometimes stayed; however, she could not recall her friend's last name or the names of other people frequenting the house. The Defendant noted that she was homeless and had nowhere to go.

The Defendant did not remember posting bond in 2017 after she was arrested for stealing Ms. Goff's identity; she similarly did not remember continuing to use Ms. Goff's credit card after her release on bond. The Defendant acknowledged that when she was released from jail, she continued to incur new criminal charges, and she specified that this behavior occurred when she was using drugs. The Defendant agreed that her use of Ms. Goff's credit card, as well as every theft on her record, was related to the Defendant's drug use. The Defendant denied having committed prostitution and averred that another woman used the Defendant's identification; the Defendant noted that she would "definitely admit to it" if she were guilty. The Defendant stated that the years-long periods in which she had no criminal convictions reflected times in which she was not using drugs. The Defendant said that during her last period of drug and alcohol abstinence, she had "a whole lot" of help from her mother, but that her mother began a new romantic relationship, leading to the Defendant's relapsing. The Defendant noted that she previously went to counseling, asked her doctor to take her off of a nerve medication, and told "the hospitals" that she was an addict in order to prevent them from giving her medication. The Defendant agreed that she was open to new methods of treating her drug addiction, stating that she did not "want this life anymore."

The presentence report reflected that the thirty-eight-year old Defendant had six previous convictions for misdemeanor theft; two convictions each for criminal impersonation and public intoxication; and one conviction each for forgery, fraud, a traffic offense, and prostitution "near [a] church or school." Relative to previous probationary sentences, the report noted that on October 23, 2005, the Defendant's probation in case number X66,373 was revoked and reinstated for failing to attend alcohol and drug treatment; she was ordered to serve ten days in jail, after which she was released with the same conditions. On March 16, 2018, the Defendant was placed on "determinate release" in case S66,901. On December 15, 2017, the Defendant's probation in case S66,901 was revoked in part because she failed to report "for intake" and in part due to the charges in this case. Several of the Defendant's convictions also noted probationary sentences.

The Defendant reported having dropped out of high school her freshman year; she attained her General Education Degree (GED) in 2010 and attended online college classes for two years, at which time she was placed on academic probation. The Defendant ultimately dropped out after losing her Social Security Disability benefit, which was her only income. The Defendant noted that she received the disability benefit based upon mental health issues, including social anxiety, post traumatic stress disorder, panic attacks, borderline personality disorder, and severe depression. The Defendant had received inpatient treatment for her mental health problems in 1995 and 2000. The Defendant noted that her disability benefit was conditioned upon attending outpatient mental health treatment and that she did not keep her appointments. At the time of the presentence report's compilation, the Defendant was not receiving medical care or taking medication for her mental health issues.

-4-

The Defendant reported using sedatives, alcohol, and marijuana beginning when she was fifteen years old; she noted that both of her parents were alcoholics. The Defendant stated that at maximum, she drank a fifth of liquor daily; similarly, she said that she smoked marijuana almost daily. The Defendant noted that she used sedatives between one and five times per week until June 2017. She reported using crack cocaine one to three times per month starting when she was twenty-four years old. The Defendant also reported using methamphetamine beginning when she was thirty-two years old. The Defendant further reported abusing Roxicet, an opiate, which she was initially prescribed by a pain clinic.

The Defendant reported that she was expelled from Magnolia Ridge for "too many [write] ups for not following instructions." The Defendant stated that her parents divorced when she was fifteen years old and that she ran away from home due to her father's physically abusing her. The Defendant also stated she had a physically abusive husband, whom she left after one year of marriage and never formally divorced. The Defendant had three children; her parental rights had been terminated relative to two children, and her third child lived with the Defendant's grandmother. The Defendant reported being homeless for the majority of her life. The Defendant's Strong-R assessment reflected that she was a "moderate" risk to reoffend and recommended residential alcohol and drug treatment, full-time employment, community service, random drug screens, restitution, and no contact with the victims.

The trial court stated that it had considered the evidence at the plea submission hearing and the alternative sentence hearing, the presentence report, the principles of sentencing and arguments made as to sentencing alternatives, the nature and characteristics of the criminal conduct, evidence and information relating to mitigating and enhancement factors, any statistical information provided by the Administrative Office of the Courts relative to sentencing practices for similar offenses, and the Defendant's testimony regarding sentencing and her potential for rehabilitation.

The trial court noted the "failed attempts at probation" documented in the presentence report, as well as the Defendant's criminal history. The court stated that it did not consider dismissed cases and listed the Defendant's previous convictions, including the two latest charges of public intoxication and criminal impersonation committed while she was on "absconder status." The court found that the Defendant's obtaining her GED was "a positive factor." The court noted the discrepancy between the Defendant's hearing testimony and the presentence report regarding the reason for her expulsion from Magnolia Ridge. The court stated,

> So in going through the report[,] her prior record, her failed attempts at completing release into the community, her continued drug use while she was on absconder status, per her testimony, her committing new criminal acts and being convicted of those while on absconder status, when I weigh those

-5-

very negative factors against the positive factors of her education . . . the court is of the opinion there's just too many negative factors and every time that I've taken a chance on [the Defendant] she has absconded[,] and I've got a feeling [that] if I put her in Mending Hearts she'd be there for a few weeks or a month or two and then she would leave. That's based on her prior history. I'm afraid that's what would happen. The negative factors far outweigh the positive factors.

The trial court denied alternative sentencing and sentenced the Defendant to ten years in confinement as a Range I, standard offender; the court noted that upon completion of that sentence, the Defendant could reapply to TN-ROCS.[2] On August 23, 2019, the Defendant filed an untimely notice of appeal relative to the ten-year[3] sentence; however, this court waived timely filing.

## ANALYSIS

On appeal, the Defendant contends that the trial court abused its discretion by denying alternative sentencing, arguing that she does not meet any of the statutory criteria set forth in Tennessee Code Annotated section 40-35-103 for incarceration. First, the Defendant avers that confinement is not required to protect society from her conduct, stating that TN-ROCS would remove her from society for at least twelve months, after which "her conduct would be so restricted that if she failed," the court could order a sentence in confinement. The Defendant further argues that the State has not demonstrated that confinement would provide an effective deterrent to other similarly-situated individuals. The Defendant asserts that she has already served "a substantial term of imprisonment," which is an effective deterrent to any future criminal conduct on her part, without depreciating the seriousness of the offenses. Finally, the Defendant avers that although she has received alternative sentences in the past, she has "never gotten the proper rehabilitation before her stay at Magnolia Ridge" and that it "does not serve the ends of justice to make" the Defendant serve her sentence in confinement. The Defendant notes that she "expressed a desire to do the right thing" at the sentencing hearing and that she asked for "a chance to complete a probationary term with a very structured rehab[.]" The Defendant concludes by stating that incarceration is not the least severe measure necessary to achieve the purposes of sentencing. The State responds that the trial court did not abuse its discretion by denying probation.

---

[2] Relative to the failure to appear conviction, the Defendant received an agreed-upon sentence of three years as a Range II, multiple offender, to be served consecutively to her ten-year sentence; at the sentencing hearing, the trial court suspended this three-year sentence to supervised probation.

[3] We note that the Defendant does not appeal her three-year probationary sentence for failure to appear.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (h) the result of a validated risk and needs assessment included in the presentence report. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's in-range sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Bise, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

A defendant is not entitled to any presumption that he or she is a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347. Tennessee Code Annotated section 40-35-102(6) is now only advisory. See Tenn. Code Ann. § 40-35-102(6)(D).

A trial court should consider the following when determining a defendant's suitability for alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

In this case, the trial court found that the Defendant was not a favorable candidate for alternative sentencing because she had repeatedly violated previous probationary sentences and had continued to use drugs and commit new offenses after absconding. In the court's estimation, the Defendant would likely leave any drug rehabilitation program she was ordered to attend. The Defendant's criminal history included multiple probationary sentences that did not deter her from committing further criminal offenses. Her probation had been revoked at least twice. In the instant cases, after being released on furlough to Magnolia Ridge, the Defendant was expelled from the program; instead of reporting her situation to the court, the Defendant relapsed, chose not to attend her next report date, and absconded for a period of months until she was arrested on new charges in February 2019.

Given these facts, the trial court had substantial evidence to find that confinement was necessary to protect society from the Defendant's well-established propensity to engage in criminal behavior when she abuses drugs and alcohol. The Defendant has repeatedly failed to comply with measures less restrictive than confinement, including an opportunity to participate in the TN-ROCS program. We note the court's statement that the Defendant may reapply to TN-ROCS after she has served her ten-year sentence, provided she is still eligible. The court properly considered the applicable sentencing principles and evidence in its alternative sentencing decision. The Defendant has failed to establish that an abuse of discretion occurred in her case, and she is not entitled to relief on this basis.

## CONCLUSION

Based upon the foregoing, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE